**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **VIVIAN MILLER-THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:07CV90 SNLJ** |
| | ) | |
| **MISSOURI DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment (# 50), filed February 2, 2009. To date, plaintiff has filed no response nor a motion for extension of time to file.

## I. Statement of the Case

Plaintiff, Vivian Miller-Thomas, works as a Corrections Officer I for the Missouri Department of Corrections ("MDOC") at the Southeast Correctional Center ("SECC"). She was born on August 2, 1969, and at relevant times to this case was 36 and 37 years old. Plaintiff began work at SECC on August 12, 2002. Her duties include supervising offenders and conducting security checks. In her annual job performance review, plaintiff has been routinely rated as "successful" on a scale of "outstanding," "highly successful," "successful," "improvement expected," and "unsatisfactory."

On several occasions plaintiff sought promotions to Corrections Officer II and Corrections Classification Assistant ("CCA"). Corrections Officer II is a supervisory position. The duties of a CCA include assigning offenders to jobs, offender payroll and transfers. Plaintiff was not chosen for any of the promotions.

The MDOC has a clear procedure for handling supervisory vacancies. The opening is announced and prospective candidates submit an application to the Office of Administration which assigns every candidate a merit score. An interview team of two to three individuals conducts interviews of the applicants. The team then evaluates each candidates' responses and performance. A recommendation memorandum is then prepared by the team chairman and sent to the superintendent.

Plaintiff's complaint alleges that eight interview teams discriminated against her on the basis of her race, gender, or age. With few exceptions, the interview teams at issue had no members in common. A summary of the decisions and evaluations in those interviews are as follows:

(1) On August 26, 2005, the interview team submitted its recommendation memorandum for one CCA position. The interview team recommended Joyce Dickerson, who the interview team stated gave an excellent interview in which she exhibited confidence, preparation and displayed her extensive experience in the MDOC. Timothy Holsten was recommended as a first alternate. The team stated he gave deliberate and accurate answers but lacked some degree of confidence. Charlana Dunn was recommended as the second alternate. The team stated she gave answers that displayed her experience and training in the field of corrections, but were not as accurate or as in depth as those of the recommended candidate. The team indicated that plaintiff's answers displayed a lack of confidence and knowledge in her answers.

(2) On December 8, 2005, and January 10, 2006, an interview team submitted two recommendation memoranda selecting candidates for two CCA positions. The interview team selected Donna Peters who gave an excellent interview which displayed her very good working knowledge of the CCA position. The interview team also recommended Christy Clinton, who's

responses were sharp and accurate and evidenced her experience outside of the MDOC. The team indicated that plaintiff displayed a lack of confidence and knowledge in stating her answers.

(3) On March 7, 2006, an interview team submitted a recommendation memorandum for one Corrections Officer II position. The team recommended Curt Curtis who gave a good interview as he as poised and knowledgeable regarding the duties of the job for which he was interviewing. The team indicated that plaintiff gave a fair interview and that her answers to questions showed a lack of confidence that did not reflect to the interview team that she would stand by her decisions in tight situations or be able to deal with difficult staff if the need would arise. The team also noted that plaintiff's attendance history was well below the acceptable standard of an officer seeking a position at this level.

(4) On June 19, 2006, an interview team submitted its recommendation memorandum selecting candidates for three Corrections Officers II positions. The team recommended: Donald Beck, who gave a good interview and showed a basic understanding of what is expected of a supervisor; Joshua Creg, who gave a good interview which related an understanding of the required leadership of the position; and Larry Ligons, who gave a good interview which showed the understanding of the position. The team believed plaintiff gave a poor interview and her lack confidence in her responses did not reflect that she would stand by her decision in tight situations or be able to deal with difficult staff. Her attendance record was again sighted as showing lack of commitment.

(5) On November 14, 2006, the team submitted a recommendation for one Corrections Officer II position. Kirk Parker was selected as having given a very good interview that showed his understanding of what was expected of a supervisor. Plaintiff was found to have given a fair interview and her responses to most of the questions were not very well thought out.

(6) On December 26, 2006, a team submitted a recommendation for one CCA position. Danny Kirkman who gave a very strong interview was selected. Plaintiff again gave a fair interview, lacked the general knowledge of the CCA position, and was hesitant when responding to questions and seemed as though she was searching for answers.

(7) On March 9, 2007, two candidates were recommended for two Corrections Officer II positions. Michael Hawkins gave a first rate interview, demonstrated outstanding communications skills, and knowledge of the duties and responsibilities of the position. Justin Hankins gave an excellent interview which displayed excellent communication abilities and knowledge of the duties and responsibilities required of the position. Plaintiff gave a poor interview and was not confident in her responses.

(8) On June 12, 2007, the team selected candidates for three Corrections Officer II positions. The selected candidates were: Sheila Durden, who gave an excellent interview in which she demonstrated self-confidence and a through knowledge of the duties and responsibilities of the position; Linda Harris who gave a very good interview where she exhibited proficient oral communication skills; and Rod Emerson who gave a good interview where he exhibited adequate oral skills. Plaintiff was found to give a poor interview and her oral skills were not at the level expected for the position. In addition her confidence and attentiveness were below average.

In addition to the interview teams' assessments, plaintiff testified that at some point in the process she became "intense and withdrawn" and began "going through the motions" in the interviews. She could not remember any specifics from her interviews, nor was she able to recall any inappropriate questions. She never consulted with prior interview team members to ascertain areas for improvement, despite a recommendation that it would be beneficial.

Plaintiff field a charged with the EEOC on April 13, 2006, alleging that she was discriminated against based upon her race and gender in defendant's failure to promote her. She was issued a right to sue letter on June 5, 2007, and filed this complaint on June 16, 2007, alleging that she was discriminated against on the basis of her race, sex, and age from November 1, 2005, to June 6, 2007.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 59©, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a

verdict for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d

202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light

most favorable to the party opposing the motion and give that party the benefit of any inferences

that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.

1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).  With

these principles in mind, the Court turns to an examination of the facts.

## II.  Claim

To establish a *prim facie* Title VII case for failure to promote plaintiff must prove (1) she

is a member of a protected class, (2) she was qualified for the promotions, and (3) that she was

not promoted and someone not from the protected class obtained the promotion.  McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); Chock v. Northwest Airlines, 113 F.3d

861, 863 (8th Cir. 1997).  Under the McDonnell Douglas framework, once the plaintiff meets the

requirement of the prima facie case, the burden shifts to the employer to demonstrate a legitimate

non-discriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at

802.  If the employer articulates such a reason, the burden shifts back to the plaintiff to

demonstrate that the employer's stated reason is pretextual and the real reason for the adverse

employment action was unlawful discrimination.  Id.

### A.  Gender Discrimination

Plaintiff has not established a *prima facie* case for gender discrimination in the August

26, 2005, December 28, 2005, January 10, 2006, and June 12, 2007 hiring.  Each of these teams

recommended female candidates who were ultimately chosen for the position.  This will prevent

plaintiff from establishing element three of her case that she was not promoted and someone not from the protected class obtained the promotion.

Further, the rest of her gender discrimination claims will fail because the defendant has stated a legitimate non-discriminatory reason for plaintiff not being promoted. Specifically, defendant has presented the evaluations used in each interview that establish that other candidates always performed better in the interview than plaintiff. Plaintiff consistently had difficulty answering the interview teams' questions with well thought out answers or did not demonstrate confidence in her answers. This is in contrast to the selected candidates that had positive evaluations such as giving knowledgeable answers or a clear understanding of the skills necessary for the job.

Plaintiff has given no response to these reasons. The burden is upon the plaintiff to demonstrate that these reasons were merely pretextual, yet, no additional evidence has been presented. This Court cannot find anything in plaintiff's complaint to lead this Court to believe that defendant's reasons are not legitimate. Therefore, defendant is entitled to summary judgment on plaintiff's claims for gender discrimination

**B. Race Discrimination**

This Court finds that plaintiff has alleged a *prima facie* case for discrimination based on race. Plaintiff alleges that (1) she is an African-American, (2) she was not promoted despite having seniority and satisfactory evaluations, and (3) all candidates who were given a promotion were white. Thus, the burden shifts to defendant to state a legitimate non-discriminatory reason for not promoting the plaintiff. Again, as noted above, defendant has presented this Court with the evaluations given by each interview team that consistently found the other candidates had

better interviews than the plaintiff. Despite, at times having more seniority than other candidates, the candidates that performed better in the interview were consistently promoted.

Plaintiff has not responded to defendant's stated reasons. There is nothing on the record to lead this Court to believe that these reasons for failure to promote are not legitimate. Therefore, defendant is entitled to summary judgment on plaintiff's claim for racial discrimination.

### C. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") applies to persons who are at least 40 years of age. 29 U.S.C. § 631(a). Plaintiff was born on August 2, 1969, thus, is not yet 40 and not a person protected by ADEA. Further, she has not presented any evidence as to the age of the applicants that were chosen for promotions. Therefore, plaintiff is unable to establish elements one and three of a *prima facie* case for discrimination.

More importantly, plaintiff did not assert that she was discriminated against on the basis of age in her EEOC charge. Accordingly, she has failed to exhaust her administrative remedies and may not file the claim here first. Stuart v. General Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000).

For both these reasons, defendant is entitled to summary judgment for plaintiff's claim for age discrimination.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED** in its entirety.

Dated this __7th__ day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE